# EXHIBIT D

SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES
PROBATION OFFICERS REPORT       REPORT SEQUENCE NO. 1

THE PEOPLE OF THE STATE OF CALIFORNIA,
Plaintiff

vs.

DARRYL LEON DAWSON,
Defendant

**FILED** APR 24 1981
JOHN J. CORCORAN, County Clerk
BY W. PAUL, DEPUTY

TRUE NAME: SAME

| DEPT | ATTY | JUDGE |
|---|---|---|
| 123 | BROADY | IDEMAN |

| HEARING | C.I.I. NO. | COURT CASE NO. |
|---|---|---|
| 3-26-81 | 5271872 | A357550 |

| DPO | AREA OFFICE | |
|---|---|---|
| PEACE | CAI | |

ADDRESS (IF IN CUSTODY, EXPECTED ADDRESS WHEN RELEASED):
1505 WEST 138TH STREET
COMPTON, CA 90222
TELEPHONE: 635-6307

PROB. NO. X- 863251

CHARGED WITH THE CRIME(S) OF:
211 PC (ROBBERY), COUNTS 4 THROUGH 8, 10 AND 11, 13 THROUGH 23 AND 187 PC (MURDER), COUNTS 9 AND 12.

CONVICTED OF THE CRIME(S) OF:
211 PC (ROBBERY), COUNTS 7, 8, 13 THROUGH 18 WITH USE ALLEGATIONS PER 12022.5 AND 1203.06(A)(1) PC AND ARMED ALLEGATIONS PER 12022(A) PC; COUNTS 19 THROUGH 23*

BY (PLEA, CT. JURY): JURY
DAYS IN JAIL THIS CASE: 391

☐ Pre-conviction invest. (131.3 C.C.P.)     ☐ Drug Diversion invest. (1000.1 (a) P.C.)

COMPANION CASES: KENNETH JORDAN

DISPOSITIONS: A357550, FOUND GUILTY 2 CTS. 187 PC & 21 CTS. 211 PC W/ USE AND ARMED ALLEGATIONS.

PERSONAL HISTORY:

| AGE | BIRTHDATE | RACE | FORMAL EDUCATION | AGE LEFT SCHOOL |
|---|---|---|---|---|
| 25 | 10-20-55 | BLACK | 11TH GRADE | 18 |

| MARITAL STATUS | HOME INCLUDES | NO. OF DEPENDENTS |
|---|---|---|
| SINGLE | DEFENDANT AND PARENTS | 1 |

| OCCUPATION | INCOME PER MONTH | WHERE EMPLOYED |
|---|---|---|
| PARKING LOT ATTENDANT | -- | L.A. COUNTY MUSIC CENTER FIRST AND GRAND, L.A., CA |

| HEALTH | CAME TO STATE | CAME TO COUNTY | BRANCH MILITARY SERVICE | KIND OF DISCHARGE |
|---|---|---|---|---|
| GOOD | BORN | BORN | NATIONAL GUARD | HONORABLE |

AS SUPPLIED BY

1  *WITH USE ALLEGATION 12022.5 AND 1203.06(A)(1) PC AND 187 PC
2  (MURDER), COUNT 12 WITH ARMED ALLEGATIONS PER 12022(A) PC AND SPECIAL CIRCUMSTANCES.

3               (AS SUPPLIED BY DEFENDANT AND INTERESTED PARTIES.)

4           DEFENDANT IS THE THIRD OF THREE CHILDREN BORN TO

5  LAURAINE CATLEY AND LEON DAWSON IN LOS ANGELES. ACCORDING TO THE

6  DEFENDANT, HE WAS REARED IN A UNITED HOME WITH TWO SISTERS. HIS

7  FATHER (57), CURRENTLY RETIRED, WAS EMPLOYED FOR MANY YEARS WITH

76 P7251-PROB. 195C (REV. 12/77)

THE UNIROYAL TIRE COMPANY. HIS MOTHER (50), IS CURRENTLY EMPLOYED BY THE WESTERN LINEN SUPPLY COMPANY AS A PRESSER.

AT THE TIME OF HIS ARREST, DEFENDANT WAS RESIDING WITH HIS PARENTS IN A THREE-BEDROOM HOUSE IN A RESIDENTIAL NEIGHBORHOOD OF COMPTON. ACCORDING TO THE DEFENDANT, HE ATTENDED CENTENNIAL HIGH SCHOOL, DROPPING OUT OF THE 12TH GRADE. HE REPORTS THAT HE DID NOT HAVE ENOUGH CREDITS TO GRADUATE AFTER SPENDING ALMOST THE ENTIRE YEAR IN THE 12TH GRADE. HE HAS NO SUBSEQUENT SCHOOLING AND NO PLANS TO RESUME SAME. DEFENDANT REPORTS THAT HE BELONGS TO NO ORGANIZATIONS AND THAT HIS HEALTH IS GOOD. IN HIS LEISURE, HE ENJOYS SKETCHING, DANCING, SPORTS AND MODEL PLANES.

ACCORDING TO THE DEFENDANT, HE JOINED THE NATIONAL GUARD IN OCTOBER OF 1975 AND COMPLETED HIS BASIC TRAINING IN MARCH OF 1976. DEFENDANT WAS UNAWARE OF HIS NATIONAL GUARD STATUS BECAUSE HE LEFT TOWN IN OCTOBER OF 1976. HE RELATES THAT HE WENT TO TEXAS AND STAYED UNTIL MARCH OF 1979. A SUBSEQUENT CHECK BY THE PROBATION OFFICER REVEALED THAT DEFENDANT WAS SENT TO FORT DIX, NEW JERSEY ON OCTOBER 31, 1975 AND RETURNED FROM BASIC TRAINING ON MARCH 12, 1976. HE WAS CONSISTENTLY ABSENT WITHOUT LEAVE IN THAT HE FAILED TO ATTEND MEETINGS, ETC. HOWEVER, DEFENDANT WAS GIVEN AN HONORABLE DISCHARGE ON OCTOBER 14, 1977.

DEFENDANT RELATES THAT HE HAS NEVER MARRIED BUT HE HAS FATHERED A SIX-YEAR-OLD SON, TERRELL, WHO RESIDES WITH HIS MOTHER,

-2-

76C692G — PROB 5A — 11/76

1  YVETTE GRANT, IN POMONA.
2           AT THE TIME OF HIS ARREST, DEFENDANT WAS EMPLOYED
3  AS A PARKING LOT ATTENDANT FOR LOS ANGELES COUNTY AT THE MUSIC
4  CENTER LOCATED AT FIRST AND GRAND.  HE HAD HELD THIS POSITION FROM
5  EARLY JANUARY OF 1980 UNTIL THE DATE OF HIS ARREST ON FEBRUARY 29,
6  1980.  PRIOR TO THAT, THE DEFENDANT WORKED FOR THE CENTURY SECURITY
7  SERVICE, INCORPORATED, LOCATED AT 8816 SEPULVEDA BOULEVARD, AS A
8  SECURITY GUARD.  HE STATES THAT HE WAS EMPLOYED THERE FROM AUGUST
9  1979 THROUGH DECEMBER OF 1979.  HOWEVER, IT WAS AN ARMED GUARD
10 SITUATION AND HE FELT THE SALARY WAS INSUFFICIENT FOR THE RISKS
11 INVOLVED.  BEFORE THAT HE HAD BEEN EMPLOYED AS A SECURITY GUARD
12 FOR THE WACKENHUT SECURITY GUARD SERVICE LOCATED ON WILSHIRE
13 BOULEVARD FROM MARCH 1979 THROUGH AUGUST 1979.  HE RELATES THAT HE
14 HAD PREVIOUSLY BEEN EMPLOYED FOR THE WACKENHUT SERVICE IN SAN
15 ANTONIO, TEXAS FOR ONE MONTH.  HE FOUND OUT THAT THEY HAD OFFICES
16 ACROSS THE COUNTRY AND RETURNED TO LOS ANGELES AND WENT TO WORK
17 HERE.  THE DEFENDANT RELATES THAT AFTER HE LEFT LOS ANGELES IN
18 OCTOBER OF 1976, HE WENT TO WORK AT THE LA PALOMA RESTAURANT IN
19 SAN ANTONIO, TEXAS AS A WAITER FROM NOVEMBER OF 1976 THROUGH
20 DECEMBER OF 1976.  HE THEN GOT A JOB AS A JANITOR FOR THE UNIVERSITY
21 OF TEXAS IN THE HEALTH SCIENCES BUILDING FROM THE LATTER PART OF
22 DECEMBER 1976 THROUGH AUGUST OF 1977 WHEN HE WAS LAID OFF.  HE
23 THEN WORKED AS A BUSBOY FOR SCHUCKER'S RESTAURANT FROM SEPTEMBER

-3-

OF 1977 THROUGH DECEMBER OF 1977 WHEN HE WENT TO WORK FOR THE WACKENHUT SECURITY GUARD SERVICE IN SAN ANTONIO.

### GANG ACTIVITY:

INVESTIGATION REVEALED NO INFORMATION OF GANG ACTIVITY.

### FINANCIAL SITUATION:

DEFENDANT RELATES THAT PRIOR TO HIS ARREST, HIS FINANCIAL STATUS WAS COMFORTABLE. HE WAS LIVING WITH HIS PARENTS AND WAS EARNING APPROXIMATELY $150 EVERY TWO WEEKS AS A PARKING LOT ATTENDANT FOR THE LOS ANGELES COUNTY MUSIC CENTER. HE OWNED A 1974 CHEVROLET VEGA WHICH HE VALUED AT $1400. HIS FURNITURE WAS VALUED AT $2,000 AND HE HAS APPROXIMATELY $250 IN HIS SAVINGS ACCOUNT. DEFENDANT RELATES THAT HE HAS NO OUTSTANDING DEBTS AND ACKNOWLEDGES NO OTHER PERSONAL ASSETS.

### SUBSTANCE USE:

DEFENDANT RELATES THAT HE IS A SOCIAL DRINKER AND HAS BEEN SINCE THE AGE OF 17. HE RELATES THAT HE HAD A PROBLEM WITH PCP WHILE IN HIGH SCHOOL AND RECEIVED COUNSELING AT MARTIN LUTHER KING HOSPITAL FOR APPROXIMATELY ONE WEEK. IN ORDER TO REMOVE HIM FROM THE AREA IN WHICH HE WAS GETTING IN TROUBLE WITH DRUGS, HIS PARENTS CONVINCED HIM TO GO TO SAN ANTONIO, TEXAS TO RESIDE WITH RELATIVES. DEFENDANT RELATES THAT HE BEGAN USING COCAINE AT THE AGE OF 21 AND HAS USED IT INFREQUENTLY SINCE THEN. HE DENIES BEING ADDICTED TO ANY DRUGS AND/OR USING ANY OTHER

NARCOTICS.

PRIOR RECORD:

SOURCES OF INFORMATION:

CII (2-26-81), LAPD, LOS ANGELES SHERIFF'S DEPARTMENT AND DEFENDANT'S STATEMENT.

JUVENILE HISTORY:

NONE.

ADULT HISTORY:

6-14-74   LYNWOOD PD - 245 PC (ASSAULT WITH A DEADLY WEAPON) - D.A./C.A. REJECT - LACK OF CORPUS DELECTI.

(ACCORDING TO THE DEFENDANT, HIS SISTER WAS ATTACKED BY A FEMALE ASSAILANT WHO THREW A BRICK AND STRUCK HER IN THE MOUTH. DEFENDANT IN RETALIATION THREW THE BRICK AT THE HOME OF THE ATTACKER AND BROKE A WINDOW.)

7-16-75   LASO - 11357 H&S (POSSESSION OF MARIJUANA) - D.A./C.A. REJECT - LACK OF CORPUS DELECTI.

(ACCORDING TO THE DEFENDANT, HE WAS A PASSENGER IN HIS COUSIN'S VEHICLE WHEN THEY WERE STOPPED BY LASO DEPUTIES. THE DEPUTY CLAIMED THAT HE OBSERVED SUSPICIOUS MOVEMENT AND MARIJUANA WAS FOUND UNDER THE PASSENGER'S SEAT OF THE VEHICLE.)

9-24-79   LASO - 23102 VC (DRIVING UNDER THE INFLUENCE) - COMPTON MUNICIPAL COURT, M274288, 10-10-79, DEFENDANT PLED GUILTY. IMPOSITION OF SENTENCE WAS SUSPENDED, HE WAS PLACED ON SUMMARY PROBATION FOR ONE YEAR ON CONDITION HE ATTEND DRIVING SCHOOL AND PAY A FINE OF $300. AFTER RECEIVING AN EXTENSION TO PAY THE FINE ON 11-16-79, DEFENDANT FAILED TO APPEAR IN COURT ON 3-14-80 AND A BENCH WARRANT WAS ISSUED. ON 5-6-80, DEFENDANT PLED GUILTY TO THE VIOLATION OF PROBATION AND WAS GIVEN CREDIT FOR 10 DAYS COUNTY JAIL SERVED AND THE BENCH WARRANT WAS RECALLED.

INSTANT OFFENSE:

   DEFENDANT AND CO-DEFENDANT, KENNETH JORDAN, WERE ARRESTED ON FEBRUARY 29, 1980 AT 11:00 P.M. IN THE VICINITY OF IMPERIAL HIGHWAY AND STATE STREET IN LYNWOOD. DEFENDANT WAS BOOKED FOR 211 PENAL CODE (ROBBERY). IN THE INFORMATION, DEFENDANT WAS CHARGED WITH VIOLATION OF SECTION 211 PENAL CODE (ROBBERY), 18 COUNTS AND 187 PENAL CODE (MURDER), TWO COUNTS. DEFENDANT WAS FOUND GUILTY BY JURY OF 211 PENAL CODE (ROBBERY), 14 COUNTS, WITH ARMED ALLEGATIONS PER 12022(A) PENAL CODE AND USE ALLEGATIONS PER 12022.5 PENAL CODE AND 1203.06(A)(1) PENAL CODE. HE WAS ALSO FOUND GUILTY BY JURY OF 187 PENAL CODE (MURDER), FIRST DEGREE, COUNT 12, WITH ARMED ALLEGATIONS PER 12022(A) PENAL CODE, USE ALLEGATIONS PER 12022.5 PENAL CODE AND 1203.06(A)(1) PENAL CODE AND SPECIAL CIRCUMSTANCES PER 190.2(A)(17) AND 190.2(B) PENAL CODE.

   CO-DEFENDANT JORDAN WAS FOUND GUILTY BY JURY OF TWO COUNTS OF 187 PENAL CODE (MURDER) FIRST DEGREE WITH ARMED AND USE ALLEGATIONS AND SPECIAL CIRCUMSTANCES. HE WAS ALSO FOUND GUILTY OF 21 COUNTS OF 211 PENAL CODE (ROBBERY) WITH USE AND ARMED ALLEGATIONS.

   PER THE DISTRICT ATTORNEY'S FILE, THE ELEMENTS OF THE OFFENSES APPEAR TO BE ESSENTIALLY AS FOLLOWS:

   COUNTS 7 AND 8: ON JANUARY 30, 1980, TWO ARMED SUSPECTS ROBBED THE JACK-IN-THE-BOX LOCATED AT 4069 CENTURY BOULEVARD

1  IN INGLEWOOD AT 10:40 P.M. THE CASH REGISTER WAS RIFLED AND
2  A CLERK'S WALLET WAS TAKEN. TOTAL VALUE OF LOSS WAS $170.
3          COUNTS 12 THROUGH 18: ON FEBRUARY 29, 1980 AT
4  9:00 P.M., TWO ARMED SUSPECTS ROBBED THE BOYS MARKET LOCATED AT
5  3670 SOUTH CRENSHAW BOULEVARD IN LOS ANGELES. PRIOR TO ENTERING
6  THE STORE, ONE OF THE SUSPECTS ACCOSTED THE SECURITY GUARD, WHO
7  WAS OUTSIDE THE STORE USING A PAY PHONE, SHOT HIM ONCE IN THE CHEST
8  AND LEFT HIM LYING WHERE HE FELL. THE GUARD SUBSEQUENTLY DIED
9  AND A SHORT TIME LATER, AFTER ROBBING SEVERAL CHECKSTANDS TWO
10 SUSPECTS FLED WITH APPROXIMATELY $1200.
11         COUNTS 19 THROUGH 23: ON FEBRUARY 29, 1980 AT
12 APPROXIMATELY 9:10 P.M., TWO ARMED SUSPECTS ROBBED THE MC COY'S
13 MARKET LOCATED AT 10905 SOUTH ATLANTIC BOULEVARD IN LYNWOOD. THEY
14 ENTERED THROUGH A REAR DOOR, ROBBED SEVERAL CHECKERS, THE LIQUOR
15 DEPARTMENT AND THE SNACK BAR AND FLED WITH APPROXIMATELY $2,000
16 IN RECEIPTS.
17         AT APPROXIMATELY 11:00 P.M. IN THE VICINITY OF
18 IMPERIAL HIGHWAY AND STATE STREET IN LYNWOOD, THE VEHICLE IN WHICH
19 THE DEFENDANT AND CO-DEFENDANT WERE RIDING WAS OBSERVED BY A
20 LOS ANGELES SHERIFF'S OFFICE DEPUTY TO RUN A RED LIGHT AND TO BE
21 WEAVING ACROSS LANES. THE DEPUTY ACTIVATED THE RED LIGHT ON HIS
22 VEHICLE BUT THE VEHICLE IN WHICH THE DEFENDANT AND CO-DEFENDANT
23 WERE RIDING CONTINUED FOR SEVERAL BLOCKS. THE OCCUPANTS OF THE

-7-

75C692G — PROB. 5A — 11/76

VEHICLE APPEARED TO BE MAKING WHAT THE DEPUTY CONSIDERED AN UNUSUAL AMOUNT OF MOVEMENT WITHIN THE VEHICLE. WHEN THE VEHICLE FINALLY STOPPED, <u>THE DEFENDANT AND CO-DEFENDANT EXITED AND WALKED BACK TO THE PATROL VEHICLE.</u> THE DEPUTY NOTED THAT THE TWO OCCUPANTS MATCHED THE DESCRIPTION OF SUSPECTS INVOLVED IN THE MC COY'S MARKET ROBBERY AND CALLED FOR OTHER UNITS. A SUBSEQUENT INVESTIGATION OF THEIR VEHICLE REVEALED A PARTIALLY OPENED POUCH WITH A HANDGUN AND A LARGE AMOUNT OF CASH WHICH WAS RECOVERED. THE AMOUNT OF CASH IN THE DEFENDANT'S POSSESSION WAS $699.85.

LOS ANGELES POLICE DEPARTMENT OFFICERS INVESTIGATING THE ROBBERY AND MURDER AT THE BOYS MARKET RECEIVED AN ANONYMOUS TIP REGARDING THE DESCRIPTION OF THE VEHICLE USED IN THE COMMISSION OF THE OFFENSE. THEY BROADCAST THIS INFORMATION AND WAS CONTACTED BY THE LOS ANGELES SHERIFF'S DEPARTMENT. A SUBSEQUENT INVESTIGATION REVEALED THAT THE VEHICLE FITTING THE DESCRIPTION WAS PARKED AT THE CO-DEFENDANT'S RESIDENCE. THE CO-DEFENDANT'S ROOMMATE HAD A LARGE AMOUNT OF MONEY WHEN INVESTIGATED BY THE OFFICERS AND RELATED THAT THE CO-DEFENDANT HAD CALLED AND TOLD HIM WHERE TO FIND THE MONEY AND TO USE IT FOR RENT, ETC. THE DEFENDANT AND CO-DEFENDANT WERE SEEN IN CUSTODY, INTERVIEWED AND SUBSEQUENTLY PLACED UNDER ARREST ON MARCH 10, 1980.

DEFENDANT'S STATEMENT:

THE DEFENDANT DOES NOT DENY BEING INVOLVED IN THE

-8-

76C092G — PROB 5A — 11/76

ROBBERIES BUT DISCLAIMS ANY INVOLVEMENT AND/OR KNOWLEDGE OF THE MURDERS. HE RELATES THAT HE WAS NOT PRESENT WHEN THE CO-DEFENDANT SHOT EITHER OF THE TWO VICTIMS. DEFENDANT RELATES THAT HE WAS CONVINCED TO PARTICIPATE BY THE CO-DEFENDANT WHO MINIMIZED THE DANGERS INVOLVED AND THE POSSIBLE CONSEQUENCES OF THEIR ACTIONS. DEFENDANT INDICATES THAT HE WAS MISLED BY THE CO-DEFENDANT AND IS REQUESTING LENIENCY FROM THE COURT. HE STATES THAT HE WANTS TO BE PLACED ON PROBATION AND IS WILLING TO DO COMMUNITY SERVICE AND PAY RESTITUTION. HE INDICATES THAT HE DOES NOT WANT TO GO TO STATE PRISON BECAUSE HE IS FEARFUL OF HIS SAFETY.

THE DEFENDANT SUBMITS A LENGTHY HANDWRITTEN LETTER WHICH ELABORATES IN DETAIL WHAT THE DEFENDANT RELATED TO THE PROBATION OFFICER AT THE TIME OF THE INTERVIEW.

VICTIMS:

THE MURDER VICTIM IN THE INSTANT OFFENSE IS DWIGHT COUSINS WHO WAS KILLED ON FEBRUARY 29, 1980. PROBATION OFFICER SPOKE WITH HIS MOTHER, MRS. ALMA COUSINS, WHO RESIDES AT 1358 EAST 59TH PLACE IN LOS ANGELES. HER TELEPHONE NUMBER IS 588-0865.

ACCORDING TO MRS. COUSINS, SHE DOES NOT WANT TO DISCUSS THE MATTER OVER THE TELEPHONE OR IN PERSON. SHE RELATES THAT SHE HAS BEEN TRYING TO AVOID A MENTAL BREAKDOWN AND REQUESTED NOT TO BE CALLED TO THE COURT AS SHE DID NOT "WANT PICTURES OF THOSE SNAKES ON HER BRAIN".

-9-

1  THE JACK-IN-THE-BOX LOCATED AT 4069 CENTURY
2  BOULEVARD IN INGLEWOOD WAS ROBBED ON JANUARY 30, 1980 AND
3  REPORTED LOSS OF APPROXIMATELY $170.
4  MC COY'S MARKET LOCATED AT 10905 SOUTH ATLANTIC
5  BOULEVARD IN LYNWOOD REPORTED LOSS FROM THE ROBBERY OF FEBRUARY 29,
6  1980 OF $2,000.
7  BOYS MARKET NO. 5 LOCATED AT 3670 SOUTH CRENSHAW
8  BOULEVARD IN LOS ANGELES 90016 REPORTED LOSS FROM THE ROBBERY OF
9  FEBRUARY 29, 1980 OF $1200.
10  INTERESTED PARTIES:
11  PROBATION OFFICER SPOKE WITH INVESTIGATING LOS ANGELES
12  POLICE DEPARTMENT OFFICER BIRD AT 485-2196. HE RELATES THAT THEIR
13  INVESTIGATION SHOWS THAT DEFENDANT WAS DEFINITELY INVOLVED AND
14  MORE THAN AS A PERIPHERAL HANGER-ON. HOWEVER, HE FEELS THAT
15  DEFENDANT WAS NOT THE CHIEF MOTIVATING FACTOR IN THE PLANNING AND
16  COMMISSION OF THE CRIMES. IT IS HIS OPINION THAT THE CO-DEFENDANT
17  WAS SUPPLYING THE DEFENDANT WITH DRUGS AND USED THIS AS AN
18  INDUCEMENT TO CONVINCE THE DEFENDANT TO PARTICIPATE IN THE ROBBERIES.
19  HE RELATES THAT HE DOES NOT FEEL THAT THIS DIMINISHES THE DEFENDANT'S
20  RESPONSIBILITY IN ANY WAY AS THE DEFENDANT HAD AMPLE OPPORTUNITIES
21  TO DISASSOCIATE HIMSELF FROM THE CO-DEFENDANT PRIOR TO THE ARREST.
22  HE FEELS THE DEFENDANT SHOULD GET THE MAXIMUM AMOUNT OF TIME
23  THAT THE LAW ALLOWS.

PROBATION OFFICER SPOKE WITH DEFENDANT'S MOTHER, MRS. LAURAINE DAWSON, AT 635-6307. SHE REPORTS THAT SHE DOES NOT KNOW HOW DEFENDANT BECAME INVOLVED IN THE ACTIVITIES WHICH HAS BROUGHT HIM BEFORE THE COURT. SHE FEELS THAT DEFENDANT WAS PROBABLY INFLUENCED BY THE BAD COMPANY HE WAS KEEPING AS WELL AS USING DRUGS. SHE STATES THAT SHE IS NOT SURE THAT THE DEFENDANT HAD A DRUG PROBLEM BUT THEY HAD TO SEND HIM AWAY IN 1976 WHEN HE WAS INVOLVED WITH PCP. SHE REPORTS THAT THE DEFENDANT WENT TO TEXAS AND STAYED FOR TWO OR THREE YEARS.

EVALUATION:

BEFORE THE COURT IS A 25-YEAR-OLD WITH A MINOR PRIOR CRIMINAL RECORD. THE DEFENDANT BLAMES HIS INVOLVEMENT IN THE INSTANT OFFENSE ON A PERSUASIVE CO-DEFENDANT WHO PURSUED HIM RELENTLESSLY UNTIL HE ACQUIESCED AND JOINED THE CO-DEFENDANT IN COMMITTING CRIMES AGAINST PERSONS AND PROPERTY WHILE ARMED WITH HANDGUNS.

DESPITE THE DEFENDANT'S AVOWALS OF BEING AN UNWILLING PARTICIPANT, THERE IS AMPLE EVIDENCE TO SUGGEST THAT HE WENT ALONG WILLINGLY AND SHARED FULLY IN THE COMMISSION OF THE CRIMES AND THE ILL-GOTTEN FRUITS OF THEIR LABORS. PROBATION OFFICER NOTES THAT THE DEFENDANT WAS EMPLOYED AND LIVING COMFORTABLY WHILE COMMITTING THE CRIMES FOR WHICH HE HAS BEEN CONVICTED.

-11-

76C632G — PROB 5A — 11/76

SENTENCING CONSIDERATIONS:

FACTORS IN AGGRAVATION:

(1) THE CRIME INVOLVED GREAT VIOLENCE, GREAT BODILY HARM, THREAT OF GREAT BODILY HARM AND OTHER ACTS DISCLOSING A HIGH DEGREE OF CRUELTY, VICIOUSNESS AND CALLOUSNESS.

(2) THE CRIME INVOLVED MULTIPLE VICTIMS.

(3) THE PLANNING, SOPHISTICATION OR PROFESSIONALISM WITH WHICH THE CRIMES WERE CARRIED OUT INDICATED PREMEDITATION.

(4) THE CRIME INVOLVED AN ACTUAL TAKING OF GREAT MONETARY VALUE.

FACTORS IN MITIGATION:

(1) THE DEFENDANT WITH NO APPARENT PREDISPOSITION TO DO SO WAS INDUCED BY OTHERS TO PARTICIPATE IN THE CRIME.

(2) THE DEFENDANT HAS A MINOR PRIOR ARREST RECORD.

FACTORS IN AGGRAVATION OUTWEIGH THOSE IN MITIGATION TO THE POINT THAT IF DEFENDANT IS SENTENCED TO STATE PRISON, THE HIGH-BASE TERM IS RECOMMENDED.

-12-

RECOMMENDATION:

       IT IS RECOMMENDED THAT PROBATION BE DENIED AND THAT DEFENDANT BE SENTENCED TO STATE PRISON WITH PRE-IMPRISONMENT CREDIT OF 391 DAYS.

RESPECTFULLY SUBMITTED,

KENNETH F. FARE
ACTING PROBATION OFFICER

BY _____
ALEXANDER PEACE, DEPUTY
CENTRAL ADULT INVESTIGATIONS
TELEPHONE: 974-9368

READ AND APPROVED BY _____
E. J. MILLER, SDPO

(DICTATED: 3-04-81)
(RECEIVED: 3-04-81)
(TYPED:    3-13-81)
AP:SS (8)

-13-

I HAVE READ AND CONSIDERED THE FOREGOING REPORT OF THE PROBATION OFFICER.

_____
JUDGE OF THE SUPERIOR COURT

76C692G — PROB 5A — 11/76